## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

THOMAS O'NEIL,

      Plaintiff,                            CASE NO. 03-CV-10001

v.                                    DISTRICT JUDGE THOMAS LUDINGTON
                                             MAGISTRATE JUDGE CHARLES BINDER

JEFFREY P. KISER.
ROBERT STUMPENHAUS,
a/k/a THOMAS WALKER,

      Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Dkt. 48)

**I.**     **RECOMMENDATION**

     For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED.**

**II.**     **REPORT**

     **A.**     **Introduction and Facts**

     By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on April 14, 2003.  (Dkt. 10.)  The case was reassigned to U.S. District Judge Thomas L. Ludington on September 12, 2006.  (Dkt. 44.) Pending is the above-entitled motion, which was filed under seal.  (Dkt. 48.)[1]  Plaintiff filed a

---

[1]The response (Dkt. 49) and reply (Dkt. 51) to the motion are not sealed.  With one exception (Dkt. 48, Ex. 18, letter of March 4, 1997), evidentiary references have been limited to the information available in the unsealed documents.

response opposing the motion (Dkt.49) and Defendants filed a reply to Plaintiff's response.  (Dkt. 51.)  Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

The history of this case is lengthy and convoluted.  Plaintiff explains in his complaint that in 1988 he obtained a license from the Bureau of Alcohol, Tobacco and Firearms ("BATF") to manufacture and sell explosives in connection with his fireworks display business.  (Compl. ¶ 7.)[2] In 1991, Plaintiff was convicted of two felonies (distribution of explosives materials, 18 U.S.C. § 842(e), and possession of an unregistered firearm, 26 U.S.C. § 5861(d)), and one misdemeanor (possession of marijuana, 21 U.S.C. § 844(a)).  (*Id.* ¶ 8.)  He was sentenced to 36 months of imprisonment followed by 36 months of supervised release.  As a result of these convictions, his explosives license was "revoked."[3]  (*Id.*)

Plaintiff was released from supervision on January 12, 1997.  In early April 1997, Plaintiff applied for what he characterizes as "reinstatement" of his explosives license.[4]  Plaintiff alleges that in retaliation for his application, Defendants Kiser and Stumpenhaus, as well as others unknown to Plaintiff, "began an operation which was undertaken in concert and conspiracy to

---

[2]The underlying facts are largely adopted from the earlier Report and Recommendation filed in this case. (Dkt. 17.)

[3]Pursuant to 18 U.S.C. § 842(i)(1), "It shall be unlawful for any person . . . who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport any explosive in or affecting interstate or foreign commerce or to receive or possess any explosive which has been shipped or transported in or affecting interstate or foreign commerce."

[4]The Government takes issue with the terminology used in the complaint, pointing out that Plaintiff's application was not for "reinstatement" of his license, but rather for "relief from Federal explosives disability as a result of his 1991 felony conviction" pursuant to 18 U.S.C. § 845(b)(1), which provides that "[a] person who is prohibited from shipping, transporting, receiving, or possessing any explosive under section 842(i) may apply to the Attorney General for relief from such prohibition."  (Dkt. 8 at 2.)  The application will be granted if the Attorney General "determines that the circumstances regarding the applicability of section 842(i), and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of such relief is not contrary to the public interest."  18 U.S.C. § 845(b)(2).

2

entrap him into illegal activity and bring charges against him for the purpose of insuring the denial of his application for license . . . [for] which he was presumptively entitled because his conviction in 1991 was non-violent and victimless." (Compl., Dkt. 1 ¶ 10.) Defendants counter that their investigation expanded to include Plaintiff around November of 1996, rather than in response to his application for relief from disability. (Dkt. 48 at 23; Dkt. 49, Stumpenhaus Dep., Ex. 17 at 10.)

Plaintiff alleges that Defendants Kiser and Stumpenhaus initiated meetings with Plaintiff, with Defendant Stumpenhaus acting in an undercover capacity using the name "Thomas Walker," and attempted to induce Plaintiff into engaging in illegal acts, which he refused to do. (Dkt. 1 ¶ 12.) Plaintiff claims that on April 22, 1997, Defendant Stumpenhaus, in his undercover capacity, induced Plaintiff to sell him non-explosive chemicals which could be used to create a fireworks device (subsequently referred to as the "transaction"). (*Id.* ¶ 13.) Plaintiff contends that he specifically warned "Thomas Walker" during this transaction, which was tape-recorded, that making such a device without a license from the BATF would be illegal. (*Id.*)

Plaintiff further alleges that on August 1, 1997, Defendant Kiser interviewed Plaintiff, ostensibly in connection with Plaintiff's application for removal of the explosives disability. Plaintiff claims, however, that Defendant Kiser's true purpose was to obtain incriminating information that could be used in the effort to seek a search warrant and file a criminal complaint against Plaintiff, which would ensure that Plaintiff's BATF license would not be restored. (*Id.* ¶ 16; Dkt. 12 at 13.) Several days after this interview, on August 5, 1997, Defendant Kiser applied for and was granted an arrest warrant for Plaintiff O'Neil and a search warrant for his residence. (Dkt. 1 ¶ 17; Dkt. 48, Ex. 16 (arrest); Dkt. 49, Ex. 9 (search).) Plaintiff claims that in the warrant applications, Defendants deliberately included false information so as to ensure that the warrants would issue. (*Id.* ¶ 18.) The averred false information was "the claim that the chemicals and

3

objects sold by Plaintiff O'NEIL on April 22, 1997 were in fact explosives, when, as was ultimately determined by the Court resulting in Plaintiff O'NEIL'S acquittal on January 3, 2000, the items sold by him were not explosives under any scientific or legal description thereof." (*Id.*) Plaintiff was arrested and items were seized from his residence. In October 1997, when the case against Plaintiff was presented to a Grand Jury, Plaintiff claims that Defendant Kiser again deliberately provided false testimony, specifically that Plaintiff was "engaged in the 'business of dealing explosive materials,'" which resulted in the issuance of an indictment. (*Id.* ¶¶ 21-22.)

Plaintiff was charged with four criminal counts: (I) possession of an unregistered firearm (destructive device) contrary to 26 U.S.C. § 5861(d); (II) transfer of a destructive device without an approved application contrary to 26 U.S.C. § 5861(d); (III) engaging in the business of dealing explosive materials without a license contrary to 18 U.S.C. § 842(a); and (IV) possession of a destructive device by a convicted felon contrary to 18 U.S.C. § 922(g)(1). (Dkt. 8 at 3-4.)[5] The Court's docket (E.D. Mich. case #97-CR-81496) shows that Plaintiff's jury trial before U.S. District Judge Robert H. Cleland began on August 24, 1998. Both Agent Kiser and Agent Stumpenhaus testified against O'Neil. Plaintiff claims that "[a] prominent feature of the prosecution of Plaintiff on false and illegal grounds was the fact he expressed unpopular political views in his conversations with the undercover agents sent in by Defendant Kiser and to Defendant Kiser during his interview of August 1, 1997." (Dkt. 1 ¶ 29.) The trial lasted five days and on September 1, 1998, the jury returned a verdict of not guilty on Counts I, II, and IV, and a verdict of guilty on Count III. On September 8, 1998, Plaintiff O'Neil's counsel filed a motion for new trial and a motion for judgment of acquittal with regard to Count III.

---

[5] The brief cites Count III as being a violation of "26 U.S.C." § 842(a), however, the correct citation is "18 U.S.C. § 842(a)."

In October 1998, the BATF denied Plaintiff's application for relief from explosives disability. (*Id.* ¶ 23.) Plaintiff claims that Defendant Kiser told him that he would never regain his license. (*Id.* ¶ 25.)

On December 30, 1999, Judge Cleland granted Plaintiff O'Neil's motion for judgment of acquittal on Count III of the indictment. In the Order, Judge Cleland noted that the Government suggested three potential ways in which Plaintiff could have been found to have sold explosive materials: "(1) [O'Neil] sold a combination of materials, accompanied by simple instructions, easily assembled into an explosive device; (2) the 'Aluminum German Black-Black/Grey Powder,' is the 'black powder' referred to under 18 U. S. C. § 841(d), and is thus an 'explosive powder' under the Federal Register list referred to in § 841(d), or is an unlisted explosive; (3) the fuse sold by [O'Neil] is an 'explosive material.'" (Dkt. 48, Ex. 6 at 3) (internal reference omitted). In the Order of February 18, 1998, Judge Cleland noted that the first two theories – the combination-of-materials and explosive-powder theories – could not be supported because "chemical compound" in § 841(d) means a compound already in existence, not a compound that could be made by combining materials now in existence. Judge Cleland further found that the same reasoning applied to the fuse which, to be an explosive device, must be explosive "at the time it was sold, not merely a component of an unassembled device which may, when assembled, become an explosive." (Dkt. 48, Ex. 6 at 4-5.)

Accordingly, Plaintiff O'Neil was acquitted on all charges brought against him stemming from the 1996-97 investigation by Defendants Kiser and Stumpenhaus. Plaintiff therefore applied once again for relief from explosives disability, but his application was denied on May 17, 2001. Plaintiff claims that the denial was "based solely on the taint which was injected into the record by the false allegations brought against Plaintiff O'Neil . . . ." (Compl., Dkt. 1 ¶ 28.)

5

Plaintiff filed the instant complaint on January 2, 2003, alleging claims against the state agents in their individual capacities under the doctrine announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). As such, the complaint seeks damages arising out of alleged violations of Plaintiff's constitutional rights by the defendants acting under color of federal law. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 306 n.1 (6th Cir. 2000). On March 9, 2005, by Order Adopting Magistrate Judge's Report and Recommendation, the BATF and the Department of Treasury were terminated from the case and Count II of the complaint was dismissed. (Dkt. 20.) The remaining counts against Defendants Kiser and Stumpenhaus are: (Count I) violation of constitutional rights and (Count III) conspiracy. Count I contains two claims, First Amendment retaliation and malicious prosecution:

> a. Retaliation pursuant to the First Amendment for his reapplication for his license in April, 1997 and the subsequent denial of that license in October, 1998, contrary to the First and Fifth Amendments of the United States Constitution. Prosecution without probable cause initiated by Defendants on August 7, 1997, resulting in Plaintiff's acquittal as a matter of law on January 3, 2000, contrary to the Fourth Amendment.

> b. Retaliation pursuant to the First Amendment for Defendants successful resistance to the unconstitutional prosecution against him related to his reapplication for his license on October 2, 2000 and ultimately denied in 2001, in violation of his rights under the First and Fifth Amendments of the United States Constitution concerning his right to pursue a legal occupation and to resist and complain about illegal actions against him.

(Compl., Dkt. 1 ¶ 38.) Count III avers that each defendant's actions "constitute a conspiracy to violate [Plaintiff's] rights pursuant to the First, Fourth, and Fifth Amendments of the United States Constitution." (*Id.* ¶ 44.)

### B.   Governing Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter

of law." FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist.  *Street*, 886 F.2d at 1479-80.  Instead, the court will rely upon the "facts presented and designated by the moving party."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).  The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party:  seeking out facts, developing legal theories, and finding ways to defeat the motion."  *Id.* at 406.

7

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Although neither counsel contested my authority to consider this motion on the grounds that I was the judicial officer who issued the search warrant in question, I nonetheless conclude that some consideration of the issue is warranted.  Congress has provided for the disqualification of judicial officers in 28 U.S.C. § 455(a), which states in pertinent part:

> (a)    Any justice, judge, or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b)    He shall also disqualify himself in the following circumstances:

>> (1)    Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455.  In *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983), a criminal defendant argued that § 455 precluded the same magistrate who issued a search warrant from hearing the suppression motion based upon that warrant.  *Id.* at 1094.  The Eleventh Circuit found that the defendant could not raise a § 455(a) argument for the first time on appeal, but that it must be brought in a pre-hearing motion.  Regarding § 455(b), the court found that recusal was not necessary so long as the magistrate's decision on the motion to suppress was "based on an impartial consideration of the testimony and the physical evidence presented at the hearing" and did not take into consideration any "extrajudicial source of knowledge." *Id.* at 1094.  The Sixth

8

Circuit has further clarified that recusal is not warranted where "all the information known by the judge came from his judicial involvement with related cases, not from any extrajudicial or personal sources." *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005).

I note that protection is further afforded the Plaintiff by virtue of the objection procedure set forth in 28 U.S.C. § 636(b)(1). Objections may be filed with the district court to any report and recommendation, and the district court then is required to make a *de novo* determination of the matters to which objection is made. *Id.*; *United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980).

For these reasons, I believe it inappropriate to recuse.

### C.    Analysis & Conclusions

Plaintiff alleges violations of his constitutional rights by two federal officers. Under 42 U.S.C. § 1983, an individual may bring a private right of action against anyone, who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes. *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997). A plaintiff may sue a federal employee directly for a constitutional violation under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The analysis is identical under either cause of action. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999). As previously stated, the claims remaining in this case against Defendants Kiser and Stumpenhaus are malicious prosecution, First Amendment retaliation, and conspiracy to violate civil rights.[6]

---

[6]I note that Defendants assert in their motion that there is no constitutional right to be free from entrapment and, even if there was, that Defendants did not entrap Plaintiff. (Dkt. 48 at 19-21.) However, I do not read Plaintiff's complaint as alleging entrapment as a ground for relief. Even if it were averred, I suggest that Defendants are correct and that Plaintiff cannot avoid summary judgment on this ground. Defendants correctly cite *Schieb v. Human Soc. of Huron Valley*, 582 F. Supp. 717, 725 (E. D. Mich. 1984), which holds that "there is no federal constitutional right to be free from entrapment." Our Circuit has recognized that the United States Supreme Court

### 1.      Malicious Prosecution

The United States Supreme Court recently clarified the elements of a claim of malicious or

retaliatory prosecution against a federal official.  In *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct.

1695, 164 L. Ed. 2d 441 (2006), the Court began by recognizing that:

> [o]fficial reprisal for protected speech "offends the Constitution [because] it
> threatens to inhibit exercise of the protected right," *Crawford-El v. Britton*, 523 U.S.
> 574, 588, n.10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998), and the law is settled that
> as a general matter the First Amendment prohibits government officials from
> subjecting an individual to retaliatory actions, **including criminal prosecutions**, for
> speaking out, *id.*, at 592, 118 S. Ct. 1584; *see also Perry v. Sindermann*, 408 U.S.
> 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) (noting that the government may
> not punish a person or deprive him of a benefit on the basis of his "constitutionally
> protected speech"). . . .  When the vengeful officer is federal, he is subject to an
> action for damages on the authority of *Bivens*.  *See* 403 U.S., at 397, 91 S. Ct. 1999.

*Hartman,* 126 S. Ct. at 1701 (emphasis added).  The Court noted that this cause of action is unique

in the sense that " the causal connection required here is not merely between the retaliatory animus

of one person and that person's own injurious action, but between the retaliatory animus of one

person and the action of another."  *Id.* at 1705.  Due to this extra step in the chain of causation, the

Court held that plaintiffs bringing such claims must plead and show the absence of probable cause

for pressing the underlying criminal charges:

> In sum, the complexity of causation in a claim that prosecution was induced by an
> official bent on retaliation should be addressed specifically in defining the elements
> of the tort.  Probable cause or its absence will be at least an evidentiary issue in

---

in *United States v. Russell*, 411 U.S. 423, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973), "noted that the defense of
entrapment was unavailable to a defendant who was predisposed to commit a crime, but held open the possibility
that due process might forbid truly outrageous conduct even if a defendant was predisposed." *Giovanetti v. Tomasi*,
1994 WL 198188, at *2 (6th Cir. May 19, 1994).  However, the Sixth Circuit has also noted that "[w]hile we and
other circuits have recognized this defense, no courts that we are aware of have authorized its use in a civil action
or as the basis for a section 1983 action." *Id.* (internal citation omitted).  The Court in *Giovanetti, supra*, also noted
that the *Schieb, supra*, decision held that there is no right to be free from entrapment but refrained from deciding
whether the *Schieb* decision correctly stated the law, concluded that the Plaintiff had not been entrapped, and even
if he had, that "there was no 'clearly established law' that would have put the defendants on notice that plaintiffs
had a constitutional right to be free from entrapment in a civil administrative action, or that their conduct was so
outrageous as to violate due process principles." *Id.*  I suggest that the same conclusion would apply in this case.

10

practically all such cases. Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must be pleaded and proven.

*Id.* at 1707.

Despite the fact that this case was filed years before the Court's pronouncement in *Hartman*, Plaintiff met its requirements by clearly alleging the lack of probable cause in his complaint. (Compl. ¶ 38.)

### a.   Qualified Immunity Defense

Defendants assert that they are entitled to qualified immunity for their actions which led to the arrest and prosecution of Plaintiff. (Dkt. 48 at 31-37.) The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

11

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that courts are to:

> employ the sequential analysis prescribed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First (the court) must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged are sufficient to make out a violation of the Constitution. *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*

*Greene*, 310 F.3d at 894.

The clearly established right must be particularized such that a "reasonable official in the defendant's position knows that her actions violate that right." *Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 505 (6th Cir. 2005). In addition, in the context of a dispositive motion, the next determination is "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.

1999) (en banc).[7]   The court views the facts in the light most favorable to the plaintiff but must only consider the facts known to the officers at the time the conduct was undertaken.  *Hale v. Kart*, 396 F.3d 721, 725, 728 (6th Cir. 2005).

###    i.    Whether the Facts are Sufficient to Make Out a Constitutional Violation

The Fourth Amendment of the U.S. Constitution requires that an arrest be supported by probable cause.  U.S. CONST. Amend IV; *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). "[P]robable cause means something 'less than evidence that would justify . . . conviction,' but 'more than bare suspicion.'"  *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)).

Plaintiff takes issue with Defendants' assertion that, because he was indicted, *ipso facto* there was probable cause.  (Dkt. 49 at 11.)  I suggest, however, that both the quotation and the law summarized within it are correct.  The fact that Plaintiff was indicted effectively eliminates Plaintiff's contention that probable cause was lacking because an indictment may be an intervening or superseding cause in an action for malicious or retaliatory prosecution.  *See Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) ("it has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer' . . . [t]herefore, because Plaintiff was indicted pursuant to a determination made by the grand jury, he has no basis for his constitutional claim.") (internal citation omitted);  *Murray v. Earle*, 405 F.3d 278, 290-93 (5th Cir. 2005) (surveying various opinions); *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994)

---

[7]Other circuits, such as the First Circuit,  employ a similar three-step test: "'(I) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.'" *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005) (quoting *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004)).

("It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.").  Thus, I suggest that Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claim and that there is no need to continue the qualified immunity analysis any further.

Nevertheless, in the interests of completeness and judicial economy on review, I will continue in the alternative.  Even if Defendants were not entitled to summary judgment due to the break in the causal chain by the indictment, I suggest that they are nevertheless entitled to qualified immunity on other grounds.

Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). When a court is called upon to make a determination as to whether an arrest was supported by probable cause, the arresting officer's subjective knowledge of the facts are the only facts to be considered, even if it is now known that some of the officer's beliefs were in fact mistaken.  *Klein*, 275 F.3d at 549-50.

"[I]ssuance of a warrant is not an automatic shield from liability but is 'only one factor [used] in applying the test of "reasonable professional judgment" to the officer's conduct.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 701 (6th Cir. 2006) (quoting *Greene,* 80 F.3d at 1107).[8]  In *Armstrong*, the officers "expressed their uncertainty about the law to a prosecutor and

_____

[8]Stated differently, "officers . . . are entitled to rely on a judicially secured warrant unless the warrant was so lacking in indicia of probable cause that existence of probable cause was unreasonable." *BPNC, Inc. v. Taft*, 147 Fed. App'x 525, 530 (6th Cir. 2005) (finding no constitutional violation where plaintiff failed to identify any

received assurances in response before applying for the warrant." *Id.* at 702.  The Court found that they had acted reasonably in seeking and relying on the prosecutor's advice and thus, were entitled to qualified immunity.  *Id.*

In the instant case, although there is no evidence that consultation with an Assistant Untied States Attorney occurred, the warrant was approved by a judicial officer.  An officer cannot rely on the judicial determination of probable cause, however, if he knowingly makes false statements or omissions in his affidavit that are necessary to the finding of probable cause.  *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989).  "Reckless disregard for the truth in the submission of a warrant application may be established where an officer 'in fact entertained serious doubts as to the truth of the allegations' or where 'circumstances evinc[ed] obvious reasons to doubt the veracity of the allegations' in the application."  *Burke*, 405 F.3d at 81 (quoting *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002)).

In determining whether an officer's reliance is reasonable, courts are to determine whether (1) whether the warrant appears to be valid on its face, and, if so, (2) whether reliance is undermined by an intent to include false or misleading evidence and if probable cause exists without the false or misleading evidence.  *Hale,* 396 F.3d at 725-26.

The affidavit in support of the search warrant states that Plaintiff met with a confidential informant and undercover agent Stumpenhaus, that Plaintiff agreed to sell components needed construct a "bomb," and that Plaintiff agreed to give them "detailed written instructions on how to put it together," but that Plaintiff stated he "would not put the bomb together."  (Dkt. 49, Ex. 9 ¶ 6.)  The affidavit goes on to describe that Plaintiff arrived at a set location on April 22, 1997,

_____

statements in the affidavit that were false and failed to identify which officers stated a deliberate falsehood or showed a reckless disregard for the truth).

with the following items:  (a) 3 plastic bags containing around 15-20 pounds white powder (Potassium perchlorate)[9], (b) 1 plastic bag containing around 2 pounds yellow powder (sulphur), (c) 1 plastic bag containing black/grey powder (aluminum flake German black powder), (d) 1 plastic bag containing around 1/8 of a pound of white powder (silica powder), (e) 3 lengths of cannon safety fuse, (f) 6 heavy cardboard tubes with wooden end caps, and (g) handwritten instructions from Plaintiff on "how to mix the chemicals together to construct an explosive device."  (Dkt. 49 ¶ 8.)[10]  In addition, the affidavit describes the opinion of David Shatzer, an Explosives Enforcement Officer with BATF, that the "above listed chemicals, along with the cardboard tubes and end caps (also supplied by O'Neil) would constitute a destructive device as defined in Title 26, United States Code, section 5845(f)."  (*Id.* ¶ 11.)  The affiant further states "I know that destructive device, as defined in Title 26, United States Code, section 5845(f)(1) means: (1) any explosive; incendiary or poison gas(A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant and (3) any combination of parts either designed or intended for use in converting any device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled."  (*Id.* ¶ 12.)  Finally, the affiant notes Plaintiff's possession of a firearm that is not registered to him and which is not proper as Plaintiff was a convicted felon. (*Id.* ¶ 13.)

---

[9]For each item, the parenthetical description is that alleged to have been given by Plaintiff.

[10]These descriptions are also found in the affidavit in support of the arrest warrant.  (Dkt. 48, Ex. 16 ¶ 4.)

16

I believe that the confusion reflected in the briefs stems from the difference between the alleged crimes contemplated in the search and arrest warrants and the crimes actually charged in the criminal complaint and indictment. Although Plaintiff is now challenging the search and arrest warrants based on his conviction (and ultimate dismissal) under 18 U.S.C. § 842(a) (Count III), the search and arrest affidavits do not mention any potential violation of 18 U.S.C. § 842(a). (Dkt. 48, Ex. 16 (arrest); Dkt. 49, Ex. 9 (search).) Instead, the affidavits and warrants focus on violations of 26 U.S.C. § 5845(f) (possession of components that can be readily assembled into a destructive device) (Count I) and 26 U.S.C. § 5861(d) (Count II) and 18 U.S.C. § 922(g)(1) (possession and transfer of an unregistered firearm, i.e., destructive device) (Count IV). (*Id.*) It is only after the warrants were issued and the items were seized that the United States Attorney's office decided to add the charge of violation of 18 U.S.C. § 842(a) to the indictment.

I suggest that the above facts support probable cause for violations of 26 U.S.C. § 5845(f) (possession of components that can be readily assembled into a destructive device) (Count I) and 26 U.S.C. § 5861(d) (Count II) and 18 U.S.C. § 922(g) (1) (possession and transfer of an unregistered firearm, i.e., destructive device) (Count IV), regardless of whether the term "bomb" was actually used. Although these same facts may not support probable cause for the charge Plaintiff was eventually convicted of and that was ultimately dismissed; namely, violation of 18 U.S.C. § 842(a) (Count III), the allegations do not have to support probable cause for a crime later charged via the discretion of the Assistant Untied States Attorney. *United States v. Dede*, 83 Fed. App'x 732, 737 (6th Cir. 2003) (finding no Fourth Amendment violation where probable cause existed to arrest defendant for possessing false identification even though he was later arrested for drug trafficking); *Sanchez v. City of Sandusky*, 49 Fed. App'x 522, 526 (6th Cir. 2002) ("Although . . . police officers had no probable cause to arrest [defendant] for threatening domestic violence

. . . the officers had probable cause . . . to detain [him] on charges of menacing . . . [and] [t]he fact that the police did not themselves contemplate a charge of menacing when arresting [defendant] does not so extinguish the probable cause for such an action that a Fourth Amendment violation exists."); *United States v. Bookhardt*, 277 F.3d 558, 567 (D.C. Cir. 2002) ("if a police officer arrests a defendant on a ground that ultimately proves invalid, the arrest is nonetheless lawful if the same officer had probable cause to arrest the defendant for a different offense"). For these reasons, I further suggest that it would be reasonable to assume the affidavit and warrant set forth sufficient facts which, if true, could support a facially valid warrant.

The next step in the analysis is the determination of whether the officer's reliance is undermined by an intent to include false or misleading evidence and, if so, whether probable cause exists without the false or misleading evidence. *Hale,* 396 F.3d at 725-26. Here, the plaintiff bears the burden of making a "strong preliminary showing" that the affiant engaged in "deliberate falsehood" or "reckless disregard for the truth" in his inclusion of false facts or omission of critical information from the affidavit in support of a search warrant. *Hale*, 396 F.3d at 736 (citing *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *Mays v. City of Dayton*, 134 F.3d 809 (6th Cir. 1998); and *United States v. Atkin*, 107 F.3d 1213 (6th Cir. 1997)). I suggest that Plaintiff has not done so on the instant facts.

In *Hale, supra*, the court found that the plaintiff failed to provide any evidence of the affiant's intent to mislead, and the plaintiff had not even argued that the omissions were critical to the finding of probable cause. However, the court admonished that it did "not foreclose the possibility that strongly material omissions could provide evidence of an intention to mislead." *Hale*, 396 F.3d at 727.

Defendants here contend that Plaintiff cannot establish deliberate falsehood or reckless disregard for the truth because the affidavit contained no falsity since "an explosive device under 26 U.S.C. § 8545(f)[11] 'may consist of parts intended for use in converting same into a combination which will constitute such a device,'" citing *United States v. Greer*, 588 F.2d 1151, 1157 (6th Cir. 1978), or because the incendiary devices have "no industrial or social use," (citing *United States v. Thomas*, 111 F.3d 426, 428 (6th Cir. 1997). (Dkt. 48 at 27, 25-30.) Defendants further argue that it was reasonable for the officers to believe probable cause was present because the trial judge[12] could not comprehend how a rational jury could have found Plaintiff not guilty of Counts I and II of the indictment.[13] (Dkt. 48 at 25-37; Ex. 6 n.1.)

On the other hand, Plaintiff argues that important facts were withheld from the Magistrate Judge, and, at the same time, false information was provided. Specifically, Plaintiff contends that the affidavit failed to note that he provided only cardboard cylinders (which are associated with pyrotechnics rather than the metal cylinders associated with bomb making), failed to include the fact that Plaintiff "insisted that he would have nothing to do with illegal activity," and was misleading because the agents repeatedly used the word "bomb" although Plaintiff himself had never used that term. (Dkt. 49 at 12-16.)

In his complaint, Plaintiff avers that the false information in the affidavits was "the claim that the chemicals and objects sold by Plaintiff O'NEIL on April 22, 1997 were in fact explosives, when, as was ultimately determined by the Court resulting in Plaintiff O'NEIL'S acquittal on

---

[11]This appears to be a typographical error; the proper code section is 5845 rather than 8545.

[12]U. S. District Judge Robert H. Cleland.

[13]Those counts were: (I) possession of an unregistered firearm (destructive device) contrary to 26 U.S.C. § 5861(d) and (II) transfer of a destructive device without an approved application contrary to 26 U.S.C. § 5861(d).

January 3, 2000, the items sold by him were not explosives under any scientific or legal description thereof." (Dkt.1 ¶ 18.)

Defendants' reliance on *United States v. Greer, supra*, at first blush, appears misplaced. In *Greer,* the materials shipped by the defendant were 104 primers and 50 electrostatic master blasting caps. *Greer*, 588 F.2d at 1154. The Court agreed with the "decided preponderance of the decisional law . . . holding that an explosive device may consist of parts intended for use in converting same into a combination which will constitute such a device." *Greer*, 588 F.2d at 1157. In addition, the defendant in *Greer* was charged and convicted under 26 U.S.C. § 5845(f),[14] while in the instant case, Plaintiff was charged convicted, and ultimately relieved from a conviction under 18 U.S.C. § 842(a). Furthermore, in deciding the motion to dismiss Plaintiff's conviction, Judge Cleland properly rejected the language set forth in *Greer, supra*, because the instant Plaintiff was not charged or convicted under 26 U.S.C. § 5861 (to which the 26 U.S.C. § 5845 definition pertains) but rather was convicted under 18 U.S.C. § 842(a) (to which the 18 U.S.C. § 841(d) definition pertains). (Dkt. 48, Ex. 6 at 3.) As Judge Cleland aptly distinguished, the definition of chemical compound under the relevant "18 U.S.C. § 841(d) means a compound already in existence, i.e., a compound already mixed." (*Id.* at 4-5.) Judge Cleland then noted that the same reasoning would apply to the term "device." "In other words, a 'device' must be an 'explosive' in the state in which it exists at the time it was sold, not merely a component of an unassembled device which may, when assembled, become an explosive." (*Id.* at 5.) Judge Cleland specifically contrasted the section relied upon by Defendants when he stated that:

> § 841(d) contains no language allowing a conviction based upon selling chemicals which could be 'readily assembled' into an explosive. Such a provision appears in, for example, 26 U.S.C. § 5845(f), and allows a conclusion that a 'bomb' exists when

---

[14]Similarly, the *Thomas* case relied upon by Defendants is also a case interpreting 26 U.S.C. § 5845(f).

its components are present, if they can be readily assembled.  Similar language could
have been included by Congress in § 841(d), but was not.

(*Id.* at 5 n.3.)

Although these cases did nothing to aid the Government in supporting Plaintiff's conviction
under 18 U.S.C. § 842(a), I suggest that they do support Defendants' actions in securing the search
and arrest warrants which asserted violations of 26 U.S.C. § 5861 via the definition of destructive
device found in 26 U.S.C. § 5845(f).  Defendants' conclusion that the definition of destructive
device contained in 26 U.S.C. § 5845(f) includes any combination of materials either designed or
intended for use in and from which a destructive device may be readily assembled is correct.  This
truth does not become false merely because the Government chose to charge not only the crimes
that violated these sections, but also the additional crime of violation of 18 U.S.C. § 842(a).  Nor
does it become false merely because the jury chose to find Plaintiff not guilty of the crimes
charged under 26 U.S.C. § 5861.  *Dede, supra; Sanchez, supra*;  *Bookhardt, supra.*

Therefore, I suggest that Plaintiff cannot on the facts presented make a "strong preliminary
showing" that the affiant engaged in "deliberate falsehood" or "reckless disregard for the truth"
in his inclusion of false facts or omission of critical information from the affidavit in support of
a search warrant.  *Hale*, 396 F.3d at 736; *Atkin*, 107 F.3d at 1213.  I further suggest that none of
the alleged omissions – namely, that Defendants failed to specify that Plaintiff provided only
cardboard cylinders rather than metal, that Plaintiff told Defendant Stumpenhaus that what he was
selling was lawful until combined together, and that Plaintiff never used the word "bomb" – are
sufficiently critical to indicate that the affiant was reckless. *Hale, supra; Mays, supra.*

Moreover, Defendants have proffered evidence which I suggest undercuts Plaintiff's
arguments that any errors in the search warrant affidavit were deliberate.  (Dkt. 49, Ex. 16 at 62-63,

63-64; Ex. 9 (search warrant).) Although only the information known to the officer at the time he sought the search warrant is relevant to the question of whether probable cause existed, I note with interest that Agent Kiser, after securing the warrant, sought and received an expert opinion from David Shatzer, Explosives Enforcement Officer for BATF, on December 10, 1997, indicating that the items seized, "heavy cardboard cylinders, end caps, pyrotechnic fuse, and various materials identified by the laboratory as potassium perchlorate, aluminum powder, sulphur, and silica," were "consistent with components designed to be readily assembled into destructive devices" and could be readily assembled into a destructive device as defined in 26 U.S.C. § 5845(f). (Dkt. 48, Ex. 7.) I thus suggest that the Agent's actions in seeking expert confirmation reveal an attitude inconsistent with purposeful falsity or reckless disregard.

In addition, I suggest that even if the affiant had incorrectly proposed that probable cause existed to believe that 18 U.S.C. § 842(a) had been violated, such a proffer would not constitute deliberate falsehood or recklessness. Plaintiff relies on the fact that it was "ultimately determined" that the items sold by Plaintiff were not explosive materials under 18 U.S.C. § 842(a). (Dkt.1 ¶ 18.) The key term in that formulation is "ultimately." The case had progressed through trial and it was not until after the verdict that the conviction under that statute was dismissed. As a result, I suggest it would be unfair to label a law enforcement officer's conclusion as deliberately false or reckless under these circumstances. *Hale, supra; United States v. Brunette*, 256 F.3d 14, 18-19 (1st Cir. 2001) (finding that judicial officer should have made independent review to determine which images met the legal definition of "pornographic" but that officer's statement in the affidavit in support of search warrant that "all" images were "pornographic" when only several were, may have been misleading but there was no evidence the statement was anything more than inadvertence or inattention to detail).

Finally, since I suggest that the information contained in the affidavits was not false and that none of the alleged falsities or omissions were significant to the probable cause finding, it necessarily follows that I suggest that  probable cause exists without them.

### ii.       Whether the Constitutional Right was Clearly Established

Although the probable cause requirement is clearly established, what constitutes probable cause is not always easily determined.  Defendants argue that "[e]ven if Plaintiff was not in violation of federal law for possession of a destructive device, defendants should be granted qualified immunity because it was reasonable for them to believe O'Neil was in violation of Federal law."  (Dkt. 48 at 33.)   Defendants quote the District Court opinion in *Dubuc v. Kogge*, 1998 LEXIS 16799, *6 (W.D. Mich. Sept. 14, 1998), which states, "[t]here is no clearly established law, on facts such as these, that an agency violates the Constitution when it fails to interpret correctly a statute it implements."  In *Dubuc*, the defendants altered a permit, which they did not have the power to do.  The defendants relied on a statute which allowed the agency to include conditions which the defendants construed as also granting the power to alter permits.  The Court held that even though the "statute does not allow the defendants to alter the permit in the manner employed, their actions were nonetheless a reasonable response to the application, rather than a wrong of constitutional magnitude."  *Id.*  The Court then held that because Plaintiff could not establish an issue of material fact that clearly established constitutional law prohibited the conduct alleged, the defendants were immune from suit.  *Id.*

In the instant case, the law was clear, as I suggested earlier in this Report, that probable cause existed to believe Plaintiff had violated the statutes cited in the search and arrest affidavits, i.e., 26 U.S.C. § 5861.  Had the affidavits proposed that probable cause existed to believe that Plaintiff violated 18 U.S.C. § 842(a) only, I suggest the law was not so clear as to render the

23

officer's conclusion unreasonable.  Plaintiff was indicted by a grand jury, stood trial and was convicted for violating 18 U.S.C. § 842(a).  It was not until after trial that Plaintiff's conviction was dismissed.  These facts, I suggest, exhibit a legal issue that is far from clear.  Therefore, I suggest the Defendants would be entitled to qualified immunity because the law regarding what constituted explosive material was not clearly established.  *Haddad v. Fromson*, 154 F. Supp. 2d 1085, 1097 (W.D. Mich. 2001) (finding no clearly established law and applying qualified immunity where defendants, pursuant to a mistaken reading of the Sex Offender Registry Act, registered and failed to remove plaintiff's name from the registry in spite of the fact that his plea had been withdrawn and the criminal case dismissed).

### b.      Right to Pursue an Occupation

Plaintiff alleges that Defendants' actions "have denied Plaintiff of a rightful legal occupation the resulting loss of income therefrom, at least $30,000 per year."  (Dkt 1 ¶ 33.)

"[I]t is well established that the freedom to choose and pursue a career, to engage in any of the common occupations of life, qualifies as a liberty interest which may not be arbitrarily denied by the State." *R.S.S.W., Inc. v. City of Keego Harbor,* 18 F. Supp. 2d 738 (E.D. Mich.1998) (internal quotes and citations omitted). *See also Parate v. Isibor,* 868 F.2d 821 (6th Cir.1989); *Sanderson v. Village of Greenhills,* 726 F.2d 284, 286-87 (6th Cir. 1984) (holding that the plaintiff owner of a billiards parlor had stated a claim for deprivation of his liberty interest to engage in "whatever legal business he elects to pursue" and holding that the defendant City's interference with the plaintiff's business was arbitrary and thus unconstitutional); *Wilkerson v. Johnson,* 699 F.2d 325 (6th Cir. 1983) (holding that harassment and delay in plaintiffs' attempt to obtain a barber's license constitutes a due process violation of the plaintiffs' liberty interest in the pursuit of that occupation); *Benigni v. City of Hemet,* 879 F.2d 473 (9th Cir. 1988) (holding that the

plaintiff, owner of a restaurant/bar, stated a cause of action for deprivation of a liberty interest by alleging that the defendant City engaged in a campaign of harassment that infringed on the plaintiff's constitutional right to pursue an occupation). However, for the reasons stated earlier in this Report, I suggest that Plaintiff has not suffered an arbitrary deprivation of any liberty interest in pursuing a career because Defendants' actions were supported by probable cause.

### 2.  First Amendment Retaliation

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in a constitutionally protected activity, (2) the defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary fitness from continuing to engage in that activity, and (3) the adverse action was motivated at least in part as a response to the exercise of his constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). The plaintiff must show that exercise of his First Amendment right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). Where the alleged retaliatory conduct began before the plaintiff engaged in protected speech, no retaliatory claim can be established. *Id.*

Plaintiff claims that he was retaliated against when he exercised his First Amendment rights in his "reapplication for his license in April, 1997" and was therefore subject to "[p]rosecution without probable cause initiated by Defendants on August 7, 1997, resulting in Plaintiff's acquittal as a matter of law on January 3, 2000, contrary to the Fourth Amendment." (Dkt. 1 ¶ 38.) Plaintiff alleges that this retaliation was "in violation of his rights under the First and Fifth Amendments . . . concerning his right to pursue a legal occupation and to resist and complain about illegal actions against him." (*Id.*) Plaintiff also states that "a prominent feature of the prosecution on

25

false and illegal grounds was the fact that he expressed unpopular views in his conversations with the undercover agents sent in by Defendant KISER and to Defendant KISER during his interview of August 1, 1997." (Dkt. 1 ¶ 29.)

Plaintiff does not aver that he was retaliated against because of any statements he made prior to the investigation's inception nor does he aver that he was retaliated against because of any affiliation with the Patriot Movement or the Michigan Militia.

Defendants note that they began investigating Plaintiff as part of a larger investigation "in the latter part of 1996, and not because of any interaction that O'Neil had with ATF." (Dkt. 48 at 23.)[15]  Defendants argue and offer factual support for the notion that they were not aware of Plaintiff's application or desire to seek application for relief from disability until May (Stumpenhhaus) and July (Kiser) of 1997.  (Dkt. 48 at 22; Dkt. 49, Kiser Dep., Ex. 16 at 31; Aff. Search Warrant, ¶ 16; Dkt. 49, Stumpenhaus Dep., Ex. 17 at 87, 89.)  Plaintiff has failed to come forward with contradictory evidence that would give rise to a disputed material issue of fact.  I therefore suggest that since the evidence indicates that the alleged retaliatory conduct began before Plaintiff ever engaged in the alleged protected speech serving as the basis of his claim, the speech could not have motivated the investigation; thus, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim.  *Mt. Healthy*, 429 U.S. at 287.

Plaintiff has not alleged that he was retaliated against for any association with the Patriot Movement or Michigan Militia which could have been speech that occurred before the alleged retaliatory investigation that began in November or late October of 1996.  As averred, Plaintiff's

---

[15]Agent Stumpenhaus indicated in his deposition that the investigation began in November or possibly late October of 1996.  (Dkt. 48, Ex. 11 at 10.)

26

contention is that he was retaliated against for his "reapplication" or application for relief from disability.  (Dkt. 1 ¶ 38.)

Even construing his complaint liberally to encompass common allegations, he refers only to "the fact that he expressed unpopular political views in his conversations with the undercover agents sent in by Defendant KISER and to Defendant KISER during his interview of August 1, 1997."  (Dkt. 1 ¶ 29.)  Of course, this speech also occurred during the investigation and thus could not have been the motive or impetus for the investigation to commence.  Since the alleged retaliatory conduct began before the Plaintiff engaged in protected speech, I suggest that summary judgment is appropriate on this ground.  *Mt. Healthy*, 429 U.S. at 287.

Defendants also argue that Plaintiff's letter of March 4, 1997, "threatens a physical confrontation" and thus, constitutes "fighting words" that are not entitled to First Amendment protection.  (Dkt. 48 at 12-13; Ex. 18.)   Defendants note that during the deposition of Plaintiff, Plaintiff "admitted this [March of 1997 letter] was no idle threat, that if SA Lawandus knocked on his door to serve legal process, such as a subpoena, Plaintiff 'would punch [] him in the mouth,' '[t]hat there probably was going to be a fistfight.'" (Dkt. 48 at 13; O'Neil Dep. 16-19, 20:1-6.) Defendants cite further instances where  Plaintiff, in speaking with undercover agents, threatened to harm federal agents if they were to come to his house.  (*Id.* at 13-15.)  Plaintiff responds that his letter of March 4, 1997, addressed to Stanley Zimmerman of the ATF  which criticized an ATF agent, is protected speech.  (Dkt 49 at 6-11.)

Any retaliation claim based on this letter or the conversations between Plaintiff and the undercover agents suffers from the same fatal flaw as the claim based on Plaintiff's application for relief from disability above. This letter and the conversations, like the  Plaintiff's application for relief from disability, occurred *after* the investigation of Plaintiff began in November or late

October of 1996.  Consequently, they cannot serve as a basis for Plaintiff's retaliation claim.  *Mt. Healthy, supra*.  Since they cannot support Plaintiff's claim, I suggest that there is no need for Defendants to seek to undermine their constitutional protection.

It should also be noted that Plaintiff has not averred or argued that the letter sent to the BATF in November of 1996, indicating Plaintiff's intent to seek relief from disability, was shared with Defendants or prompted any retaliatory conduct, such as the investigation which began in the "latter part of 1996."  (Dkt. 48 at 23.)

Even if the merits of Defendants' constitutional argument were addressed, I suggest this March 4, 1997 letter[16] would be entitled to First Amendment protection because it does not constitute fighting words.  Fighting words are those words "'which by their very utterance inflict injury or tend to incite an immediate breach of the peace'"[17] or that can be considered "'an invitation to exchange fisticuffs.'"  *Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997) (internal citations omitted) (plaintiff's yelling f-k you and holding up raised middle finger to group of abortion protesters while driving by in a truck did not constitute fighting words).  I suggest that this

---

[16]Plaintiff's letter states as follows:

> Please allow the enclosed to give you insight into a situation that I think that you should be aware of.  The documents are self-explanatory to the resolution of the issues involved.
>
> Because of his vindictiveness, pugnacity, foul language, and less than professional actions, it will remain in the best interest of myself and family, and your division of the Federal Treasury Department to keep the ATF Agent complained of herein out of my future life.  Any future confrontations between myself and this agent in his official capacity could, and probably will, result in a catastrophic clash of personalities that will undoubtedly again pinpoint the ATF in the national media spotlight.
>
> In short, if someone needs to be sent, for any reason, be it not he.  I am a peaceful, cooperative individual.  He for some reason refuses to accept that.
>
> Should you have any questions or concerns with respect to this matter that I could be of assistance, please don't hesitate to contact me.

(Dkt. 48 at Ex. 18.)

[17]*Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942)).

letter is a candid admission of a personality conflict that attempts to prevent a physical confrontation rather than incite any breach of the peace, let alone an immediate one. *Sandul, supra*; *Gooding v. Wilson*, 405 U.S. 518, 526, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972) (finding statute unconstitutionally overbroad because it proscribed constitutional speech including, among other things, words that "might still tend to cause a breach of the peace at some future time.") (internal citation omitted). In addition, the letter was directed toward a law enforcement officer who should be able to control any emotions stirred by the communication. *City of Houston v. Hill*, 482 U.S. 451, 462, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (fighting words exception to the First Amendment "might require a narrower application in cases involving words addressed to a police officer, because a 'properly trained officer may reasonably be expected to "exercise a higher degree of restraint" than the average citizen, and thus be less likely to respond belligerently to "fighting words."'") (internal citations omitted).

### 3.    Conspiracy

Plaintiff avers that the "actions of the Defendants and each of them, constitute a conspiracy to violate his rights pursuant to the First, Fourth and Fifth Amendments of the United States Constitution, as set forth above." (Dkt. 1 ¶ 44.) "It is well settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."[18] *Guiterrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). The allegation quoted above is, I suggest entirely conclusory. I therefore suggest that Plaintiff cannot survive summary judgment on this claim.

---

[18]Technically, conspiracy claims arise under § 1985(3) rather than § 1983.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


                                             s/ *Charles E Binder*
                                          CHARLES E. BINDER
Dated: April 11, 2007                     United States Magistrate Judge



## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Hugh Davis and James Brunson, and served on District Judge Ludington in the traditional manner.


Date:  April 11, 2007                     By     s/Jean L. Broucek
                                          Case Manager to Magistrate Judge Binder