UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS L. O'NEIL,

        Plaintiff,

v.

        Case Number 03-10001-BC
        Honorable Thomas L. Ludington

JEFFREY P. KISER, ROBERT
STUMPENHAUS, a/k/a Thomas Walker,

        Defendants.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a report and recommendation issued by Magistrate Judge Charles E. Binder on April 11, 2007. The magistrate judge recommended granting Defendants Jeffrey Kiser and Robert Stumpenhaus' motion for summary judgment regarding Plaintiff Thomas O'Neil's claims of a violation of 42 U.S.C. § 1983, based on alleged violations of his rights under the First and Fourth Amendments, and a civil conspiracy to commit those violations. Plaintiff timely filed objections to the report and recommendation.

By way of introduction, the Court will provide the following recitation of the facts to further describe the lengthy history of the case, as a supplement to the summary provided by the magistrate judge.[1] Plaintiff has filed claims of First Amendment retaliation, prosecution without probable cause, and civil conspiracy against Defendants, both agents with the Bureau of Alcohol, Tobacco, and

---

[1] Defendants' motion for summary judgment was filed under seal, so this factual recitation relies on information available in the public record, including other filings in the case that are not under seal, such as Plaintiff's response to the motion for summary judgment. This response includes the depositions of Defendants Kiser and Stumpenhaus.

Firearms (BATF). According to Plaintiff's complaint, in late 1996, Defendant Kiser was assigned to work as the coordinator for the BATF's investigation into the "Patriot Movement" in northern Michigan. In January 1997, Defendant Stumpenhaus came in to work as an undercover agent in that investigation.

Years before that investigation, according to Plaintiff, his license to manufacture and deal in explosives was revoked after a 1991 conviction. (According to his deposition, he was convicted of distribution of explosive materials, possession of an unregistered firearm, and possession of marijuana by a federal jury. After serving three years in prison, he was discharged from supervised release on January 12, 1997.) He maintains that he applied for the reinstatement of his license in April 1997. He believes that Defendants engaged in a conspiracy to entrap him into illegal activity, so as to ensure that his license would be denied by bringing charges against him.

In his response to Defendants' motion for summary judgment, Plaintiff notes a letter that he wrote on March 4, 1997 to Special Agent in Charge Stanley Zimmerman of the BATF in Detroit. In the letter he requests that a particular agent not be sent to his home, so as to avoid potential confrontations. He insists that he is peaceful and cooperative but that the agent in question has a history of harassing him and his family.[2] With that letter, Plaintiff enclosed previous letters: (1) one

---

[2]That body of that letter reads as follows:

>Please allow the enclosed to give you insight into a situation that I think that you should be aware of. The documents are self-explanatory to the resolution of the issues involved.
>
>Because of his vindictiveness, pugnacity, foul language, and less than professional actions, it will remain in the best interest of myself and family, and your division of the Federal Treasury Department to keep the ATF Agent complained of herein [Agent Lewandus] out of my future life. <u>Any</u> future confrontations between myself and this agent in this agent in his official capacity could, and probably will, result in a catastrophic clash of personalities that will undoubtedly again pinpoint the

from John Wright to Plaintiff on October 21, 1996, regarding Plaintiff's possession of fuses and squibs that violated his supervised release; (2) one from Plaintiff to Debbie Satkowiak, an inspector at the BATF in Flint, on November 2, 1996, regarding his justification for possessing those squibs for, on his view, a legitimate purpose; (3) a letter from Dale Cayot, assistant chief counsel with the BATF in Cincinnati, on February 25, 1997, explaining the BATF's interpretation of federal statutes that would prohibit Plaintiff from having those items until the removal of his disability; and (4) a letter from Plaintiff to Satkowiak on March 1, 1997, expressing his continued disagreement with the BATF's explanations.

Only in Plaintiff's objections to the magistrate judge's report and recommendation does Plaintiff, for the first time, present facts that might be taken to imply that the BATF retaliatory action began as early as November 1996. There, he explains his version of those letters and the alleged motivations for them. Although he does not identify them, Plaintiff adverts in his objections to two letters prior to November 2, 1996, which he alleges constituted a dispute between him and the BATF, which he believes resulted in Defendant Kiser including Plaintiff in an investigation of the patriot movement.

According to Defendant Stumpenhaus's deposition, he first met Plaintiff on March 27, 1997. It seems that, on April 22, 1997, Plaintiff and Defendant Stumpenhaus engaged in some type of sale.

---

ATF in the national media spotlight.
  In short, if someone needs to be sent, for any reason, be it not he. I am a peaceful, cooperative individual. He for some reason refuses to accept that.
  Should you have any questions or concerns with respect to this matter that I could be of assistance, please don't hesitate to contact me.

Plaintiff's Letter to Zimmerman of March 4, 1997 [dkt #48-18].

According to Plaintiff's complaint, Defendant Stumpenhaus, in an undercover capacity, induced him to sell chemicals that could make a fireworks device. Plaintiff contests whether the items included in that sale constituted explosives under federal statute, while BATF representatives maintained that they were. (One such representative, Anthony May, testified at Plaintiff's 1997 trial that the mixture of the components sold would be an explosive, in part, because they had no mechanism for elevating them for a publicly viewable display, like fireworks.) Plaintiff goes to some length to emphasize that he did not use the term "bomb," insisting that Defendant Stumpenhaus inserted this term into the record.

At some point in or after May 1997 (but before August 1997), Defendant Kiser learned of Plaintiff's letter of March 4, 1997, according to Defendant Kiser's deposition. According to Defendant Stumpenhaus's deposition, he was unaware of the letter until this litigation. Plaintiff has not contested either of these points.

Regarding Plaintiff's April 1997 application to remove his disability, Defendant Kiser states that he learned of that application at some point in July 1997. Defendant Stumpenhaus alleges that he learned of the application from Defendant Kiser.

In his complaint, Plaintiff alleges that on August 1, 1997, Defendant Kiser interviewed him for two purposes: (1) "to obtain incriminating information against him without the protection of any warning that Plaintiff . . . was the object of any ongoing criminal investigation and that the actual purpose of the interview was to obtain information in support said of criminal investigation, although all of the facts necessary had already been completed on April 22, 1997;" and (2) as "a subterfuge relating to the denial of Plaintiff's application to have his BATF license restored, which Defendants had already decided, outside the scope of any authority available to them, should be

denied, and, about which they were determined to create facts which would result in said denial." Pl. Cplt., ¶ 15, 16. Plaintiff maintains that Defendant Kiser then prepared an affidavit for a search warrant that contained false information, resulting in a search and seizure of his property on August 7, 1997.

On August 7, 1997, Defendant Kiser applied for and received an arrest warrant for Plaintiff and a search warrant for his residence. The search and arrest were executed that day. In support of an arrest warrant, on August 5, 1997, Defendant Kiser provided an affidavit. He recounted a meeting with Plaintiff on April 22, 1997, to which Plaintiff allegedly brought several powder substances, lengths of cannon, and cardboard tubes. Defendant Kiser maintained that, at that meeting, Plaintiff also provided him with instructions on how to mix the chemicals to construct an explosive device. Defendant Kiser also attested to Plaintiff's desire not to be overheard at that meeting and at subsequent meetings. Defendant Kiser further represented that another BATF agent instructed him, based on a laboratory examination, that the chemicals and other components did constitute a destructive device under 26 U.S.C. § 5845(f). Defendant Kiser also stated that Plaintiff had a firearm at their April 1997 meeting and that Plaintiff had not registered any firearms with the appropriate federal agency.

Finally, in his affidavit in support of an arrest warrant, Defendant Kiser described how he participated in an interview of Plaintiff on August 1, 1997, as Plaintiff attempted to restore his fireworks license. During that interview, Plaintiff allegedly expressed his view that he was in compliance with explosives laws, although he was currently in possession of fuse and some 20 pounds of black powder. Defendant Kiser then recited his contacts with other offices of the BATF, which revealed the earlier correspondence about Plaintiff's possession of those items.

The magistrate judge issued the arrest warrant on two counts: (1) possession of a firearm, in violation of 26 U.S.C. § 5861(d); and (2) transfer of a firearm, in violation of 26 U.S.C. § 5861(e).

At some point in October 1997, a federal grand jury issued an indictment that charged Plaintiff with possession of an unregistered firearm or destructive device, transfer of a destructive device without an approved application, engaging in the business of dealing explosives materials without a license, and possession of a firearm as a convicted felon. On February 13, 1998, Defendant Kiser recommended denying Plaintiff's application, which then occurred on October 4, 1998. In the intervening time, Defendants testified against Plaintiff at his trial in late August 1998. Plaintiff was convicted on only one count – engaging in the business of dealing explosives without a license – but that conviction was overturned on December 30, 1999.

On December 8, 2000, Plaintiff again applied for reinstatement of his explosives privileges. Defendants did not participate in this investigation. On May 17, 2001, the BATF denied Plaintiff's renewed application.

Plaintiff now pursues, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), claims of (1) First Amendment retaliation based on the denial of his April 1997 and October 2000 applications to the BATF for a fireworks license; (2) prosecution without probable cause in violation of the Fourth Amendment; and (3) civil conspiracy to violate his First and Fourth Amendment rights. Defendants subsequently filed a motion for summary judgment under Federal Rule of Civil Procedure 56.

Under an order of reference, the magistrate judge issued a report and recommendation. He recommended granting Defendant's motion for summary judgment on a variety of grounds, including an insufficient showing of probable cause necessary to support a claim of malicious

prosecution and an insufficient showing of causation to support a claim of First Amendment retaliation.

Plaintiff's timely objections challenge the magistrate judge's analysis on each of the claims. Regarding the malicious prosecution claim, Plaintiff challenges the truthfulness and completeness of statements made in the affidavit supporting the arrest warrant, particularly focusing on whether the items sold to Defendant Stumpenhaus constituted an explosive device and whether the facts in the affidavit supported that conclusion. Additionally, Plaintiff contends that the question of probable cause must go to the jury, in a situation where, purportedly, a warrant issued based on false allegations or omissions of fact. Plaintiff further directs the Court's attention to the definition of a destructive device under 26 U.S.C. § 5845(f), because he continues to explain the difference between what he possessed and the statutory definition, as well as to question whether the magistrate judge based a determination on qualified immunity on his review of that statute. Thus, Plaintiff's objections to the malicious prosecution claim center on the existence of probable cause to support prosecution on explosives, or destructive device, charges.

When Plaintiff filed suit, the Sixth Circuit had stated that the elements of a federal claim of malicious prosecution remain somewhat unsettled, but, at a minimum, a plaintiff must show "that there was no probable cause to justify . . . arrest and prosecution." *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003) (citations and internal quotations omitted).[3] Regarding the existence

---

[3]Several years after Plaintiff filed this case, the Supreme Court, in *Hartman v. Moore*, 547 U.S. 250; 126 S.Ct. 1695 (2006), expounded on a claim of retaliation for protected conduct in the form of criminal charges. Beyond requiring a plaintiff to make a *prima facie* case that retaliatory animus caused the injury and then permitting a defendant to rebut that claim by showing that the same action would have been taken regardless, the Court noted an additional element required for such a claim: a lack of probable cause. *Id*. at 1704-1706. To establish this element, a plaintiff must overcome the "legal obstacle [of] the long-standing presumption of regularity accorded to

of probable cause, "it has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (citations and internal quotations omitted). Importantly, the subsequent determination of a grand jury does not serve to justify an earlier arrest. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 307 (6th Cir. 2005) (citations and internal quotations omitted).

Here, an indictment issued against Plaintiff in October 1997. Because a grand jury indictment that is fair on its face (and no party here has argued to the contrary), under *Higgason*, Plaintiff cannot demonstrate the lack of probable cause for prosecution after October 1997.

Plaintiff, however, was arrested in August 1997. An action for malicious prosecution includes not only the prosecution of a case after an indictment, but also earlier stages of developing a criminal case. *See Barnes v. Wright*, 449 F.3d 703, 716 (6th Cir. 2006). According to his complaint, Plaintiff maintains that the malicious prosecution commenced with his arrest on August 7, 1997. For this time period, then, Plaintiff must offer some evidence to support a claim of malicious prosecution, including the element of probable cause.

The Fourth Amendment to the Constitution declares that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause generally is defined as "reasonable grounds for belief, supported by less

---

prosecutorial decision-making." *Id*. (citations omitted).

than prima facie proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (citing *United States v. Padro*, 52 F.3d 120, 122-23 (6th Cir. 1995)).

"'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted); *see also Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (stating that probable cause exists if there is a "fair probability that the person to be arrested has or likely will commit a crime). The Court is obliged to "give great deference to a magistrate's determination of probable cause." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

Here, the magistrate judge issued the arrest warrant on two counts: (1) possession of a firearm, in violation of 26 U.S.C. § 5861(d); and (2) transfer of a firearm, in violation of 26 U.S.C. § 5861(e). Although Defendant Kiser did refer to explosives violations in his affidavit, the warrant issued only on firearms charges. Accordingly, the review for probable cause is only as to those charges, not as to any later explosives charges that may have been included in the grand jury indictment. The basis for firearms violations received little elaboration but does pass muster under a probable cause analysis. Defendant Kiser identified facts and circumstances sufficient to support a conclusion that Plaintiff had committed firearms violations: Defendant Kiser observed him in possession of a firearm and determined that Plaintiff had not registered that firearm. Regardless of the degree of support for any explosives violations based on Defendant Kiser's affidavit and regardless of communications within the BATF about Plaintiff's history with explosives, the warrant did not issue on that ground.

Plaintiff's objections regarding the magistrate judge's recommendation on the malicious prosecution claim largely concern explosives devices, such as whether the items he sold to Defendant Stumpenhaus constituted explosives devices under the federal statute or that Defendant Kiser made material omissions in the affidavit in support of the arrest warrant. If Defendant Kiser made any omissions regarding Plaintiff's alleged involvement with (possibly) explosives devices in his affidavit, those omissions are not material to an arrest warrant for counts of firearms violations. Plaintiff has made no allegation and offered no evidence regarding the probable cause for the warrant regarding the counts actually included against him at that juncture, i.e., counts of firearms violations.

Plaintiff's next objection involved his purported right to pursue a legal occupation. His terse treatment of his objection provides the Court with no factual or legal basis for evaluating the magistrate judge's report and recommendation. Accordingly, the Court will overrule that objection.

Plaintiff's third objection addressed the First Amendment retaliation claim. He argued the facts. He attempted to show that the BATF's allegedly retaliatory action commenced in the fall of 1996, rather than only in the spring of 1997. In raising that question, he seeks to provide support for the element of causation of a First Amendment retaliation claim. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (requiring "a causal connection between [the adverse action and the plaintiff's speech,] that is, [that] the adverse action was motivated at least in part by the plaintiff's protected conduct") (citations omitted).

Defendant Kiser testified that he learned of the March 4, 1997 letter between May and August 1997. Defendant Stumpenhaus testified that he did not know about Plaintiff's letter until this litigation commenced. Similarly, Defendant Kiser testified that he learned of Plaintiff's April

1997 application to remove his disability for dealing fireworks in July 1997. Defendant Stumpenhaus testified that he learned of that application from Defendant Kiser.

Plaintiff has offered no evidence to contradict this testimony that Defendants learned of his application well after the investigation commenced in November 1996 and after Defendant Stumpenhaus met and began dealings with Plaintiff. At most, Plaintiff has offered his own assertion that Defendant Kiser had those materials in his possession during the relevant time period, but he has no foundation for his assertion. Further, Plaintiff has generally alluded to the existence of correspondence to other members of the BATF that pre-dates his letter of March 4, 1997. The possibility that the knowledge of those letters could be imputed to Defendants does not suffice to meet the requirements of Rule 56(c). That is, Plaintiff has not contested the facts offered by Defendants with an affirmative showing based on proper evidence drawn from specific facts in affidavits, depositions, or other factual material that shows evidence on which the jury could reasonably find for him.

Finally, Plaintiff challenges the magistrate judge's report and recommendation regarding the conspiracy claim. He contends that actions under 42 U.S.C. § 1983 do not have a heightened pleading requirement, so the requirement of less conclusory allegations under *Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987), is improper. Even if Plaintiff is correct on this point, he cannot advance a claim of civil conspiracy in the absence of evidence sufficient to support the civil rights violations that must serve as the predicate for a civil conspiracy. Based on the foregoing analysis, Plaintiff has not provided evidence to support a civil rights claim, so his claim of a conspiracy to violate his civil rights similarly must fail.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #53] is **ADOPTED**, to the extent consistent with this order, and that Plaintiff's objections [dkt #54] are **OVERRULED**.

It is further **ORDERED** that Defendants' motion for summary judgment [dkt #48] is **GRANTED**.

        s/Thomas L. Ludington
        THOMAS L. LUDINGTON
        United States District Judge

Dated: September 20, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 20, 2007.

        s/Tracy A. Jacobs
        TRACY A. JACOBS